IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | : | |
| **Plaintiff,** | : | **Case No. 2:24-cv-2275-ALM** |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| RK FAMILY, INC. and RK | : | **Magistrate Judge Kimberly A. Jolson** |
| HOLDINGS, LLP d/b/a RURAL KING | : | |
| and SHAUN AMRINE, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter comes before this Court on Plaintiff Twin City Fire Insurance Company's ("Twin City") Motion for Judgment on the Pleadings against Defendants RK Family, Inc. ("RK Family"), RK Holdings, LLP d/b/a Rural King ("Rural King"), and Shaun Amrine ("Amrine") (collectively, "RK Defendants"). (ECF No. 24). For the reasons stated below, the Motion is **DENIED.**

## I.     BACKGROUND

This insurance coverage action arises out of the sexual harassment of a minor employee, Brian Norman, by his supervisor, Cameron Ford, at a Rural King store between December 2020 and May 2021. Plaintiff Twin City Fire Insurance Company ("Twin City") issued the relevant insurance policy to "RK Family, Inc." for the policy period of March 31, 2022 to March 31, 2023. (" Policy"). (ECF No. 1-4.)   The parties dispute whether, under that Policy, Twin City owes coverage to the RK Defendants in connection with the Charge of Employment Discrimination dually filed by Brian Norman before the Ohio Civil Rights Commission and the United States Equal Employment Opportunity Commission ("the Charges"); and Norman's civil lawsuit against

RK Holdings.  *See Norman v. RK Holdings, LLP et al.*, No. 2:22-cv-03704-ALM-EPD (S.D. Ohio,

filed Oct. 16, 2022) (hereinafter "Norman Lawsuit").

## A.  Criminal Proceedings

On June 10, 2021, Ford was indicted by a grand jury in Union County, Ohio on charges of

rape, sexual battery, and compelling prostitution as to Norman. (hereinafter the "Criminal

Proceeding").  (ECF No. 1 ¶ 8).  On May 17, 2022, he pled guilty to multiple charges and was

sentenced to 23 to 26 years in prison following his guilty plea.  (*Id.*)  He is currently incarcerated.

(*Id.*).

## B.  Charges of Discrimination

On or about June 7, 2022, Norman brought Charges of Discrimination ("Charges") before

the Ohio Civil Rights Commission and with the United States Equal Employment Opportunity

Commission ("EEOC").   (ECF No. 1 ¶ 1).   The Charges allege that, while employed by Rural

King in Marysville, Ohio, Norman was the victim of discrimination and sexual harassment over a

period of several months by his supervisor, Ford.  (*Id.* ¶ 9).   The Charges also allege that Ford's

manager, Defendant Shaun Amrine, has known about the harassment since February 2021 but

allowed it to continue, resulting in Norman and nine other minor employees being harassed by

Ford. (*Id.*).

## C.  *Norman* Lawsuit

After receiving right-to-sue letters, Norman sued RK Defendants on October 16, 2022.

*See Norman v. RK Holdings, LLP et al.*, No. 2:22-cv-03704-ALM-EPD (S.D. Ohio, filed Oct. 16,

2022) (hereinafter "Norman Lawsuit").  As alleged in the Complaint, beginning in January or

February 2020, "Ford began sexually harassing [Norman] during work hours and while

supervising Plaintiff by soliciting him to show Ford his genitals, and to allow Ford to touch his

genitals." (ECF No. 1-2 ¶ 5).  Ford's harassment "intensified during February and March 2020 with Ford sexually assaulting Plaintiff during work hours by grabbing Plaintiffs genitals[] and offering Plaintiff significant amounts of money to see Plaintiffs genitals." (*Id.* ¶ 6).  According to Norman, on or about March 5, 2021, he informed Defendant Shaun Armine—who also worked for RK Defendants—about Ford's sexual harassment.  (*Id.* ¶ 11).  Armine allegedly instructed Norman "to not tell anyone else about the harassment" and "took no immediate action against Ford." (*Id.*).  Between March 7, 2021, and March 13, 2021, Ford continued to supervise Norman "and continued to sexually harass and sexually assault [him] during work hours." (*Id.* ¶ 12). During that period, Armine allegedly called Norman while he was not working "and repeated his instructions to not tell anyone else about Ford's behaviors." (*Id.* ¶ 13).  On March 16, 2021, Armine "finally terminated Ford and reported his behavior to Police." (*Id.* ¶ 14). The Complaint further alleges that Ford had a history of harassing minor employees.  (*Id.* ¶ 10). The Norman Lawsuit seeks to hold RK Defendants liable for negligence and sexual harassment under Title VII, Ohio Rev. Code § 4112, and Ohio common law.  (*Id.* ¶¶ 16 – 26). For relief, Norman seeks compensatory damages, punitive damages, and "[a]n injunction prohibiting Rural King from hiring minors as employees in the State of Ohio and all other States. injunctive relief."  (ECF No. 1-2 at 6).

### D.  Twin City Insurance Policy

Twin City issued the relevant insurance policy, No. KB 0435776-22, to "RK Family, Inc.," effective from March 31, 2022 to March 31, 2023.  containing an Employment Practices Liability Coverage Part, which provides, in part, as follows:

**EMPLOYMENT PRACTICES COVERAGE LIABILITY PART**

I.      **INSURING AGREEMENTS**

**(A) Employment Practices Liability**

The Insurer shall pay Loss on behalf of the **Insureds** resulting from an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for an **Employment Practices Wrongful Act** by the **Insureds**.

***

II.     **DEFINITIONS**

***

"**Claim**" means any:

(1) **Employment Practices Claim** . . .

"**Employment Practices Claim**" means any of the following if made by or on behalf of an **Employee**, an applicant for employment with an **Insured Entity**, or an **Independent Contractor**:

(1) a written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

(2) a civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

(3) a formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the Insured's receipt of a notice of charges, formal investigative order or similar document, or by the Insured's having evidence of a filing related thereto; or

(4) a criminal proceeding commenced by the return of an indictment or similar document.

4

\*\*\*

"**Employment Practices Wrongful Act**" means any:

(1) wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity including giving of negative or defamatory statements in connection with an employee reference;

(2) Sexual or other workplace harassment, including, but not limited to, workplace bullying, same gender sexual harassment, quid pro quo and hostile work environment;

(3) employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

(4) Retaliation;

(5) breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement;

(6) employment-related defamation (including libel and slander) or misrepresentation;

(7) employment-related violation of the Family and Medical Leave Act, Age Discrimination in Employment Act and the Equal Pay Act;

(8) employment-related; false arrest or imprisonment and malicious prosecution; or

(9) any other employment-related tort occurring in the workplace other than those mentioned below in this definition.

* * *

"**Wrongful Act**" means any actual or alleged: (1) Employment Practices Wrongful Act; or (2) Third Party Wrongful Act.

(ECF No. 1 ¶ 12; ECF No. 1-4 at 33).

The **COMMON TERMS AND CONDITIONS** of the Twin City Policy provide, in part, as follows:

II.     **COMMON DEFINITIONS**

***

**Interrelated Wrongful Acts** means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, or transaction, or series of causally connected facts, circumstances, situations, events or transactions.

***

X.     **INTERRELATIONSHIP OF CLAIMS**

***

All **Claims** based upon, arising from or in any way related to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

(A) any of such **CLAIMS** was first made, regardless of whether such date is before or during the **Policy Period**;

(ECF No. 1-4 at 12, 18).  Pursuant to this Policy, RK Defendants demanded that Twin City defend and indemnify the RK Entities against the Charges and the Norman Lawsuit.  (ECF No. 1 ¶ 14). Twin City denies that it owes any defense or indemnity obligation with respect to the Charges and the *Norman* Lawsuit under the Twin City Policy. (*Id.* ¶ 15).

6

**E.  Procedural History**

Twin City filed its Complaint on May 9, 2024, seeking a judicial declaration that it owes no coverage to the RK Defendants in connection with the Charges and the *Norman* lawsuit.  (ECF No. 1).  On August 29, 2024, the RK Defendants filed an Amended Answer, in which they asserted counterclaims for breach of contract and declaratory judgment.  (ECF No. 13).  On February 19, 2025, Twin City filed a Motion for Judgment on the Pleadings (ECF No. 24), which RK Defendants opposed (ECF No. 25).  On August 29, 2024, RK Defendants filed an Amended Answer, in which they asserted counterclaims for breach of contract and declaratory judgment. (ECF No. 13).  On February 19, 2025, Twin City filed a Motion for Judgment on the Pleadings (ECF No. 24), which RK Defendants opposed (ECF No. 25).  This matter is now ripe for resolution.

**II.  STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).  But a court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).  A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

## III.    LAW & ANALYSIS

Plaintiff argues that it is entitled to judgment on the pleadings, because the *Norman* Lawsuit, the Charges, and the Criminal Proceedings constitute a single "Employment Practices Claim" arising from the same "Wrongful Acts" or "Interrelated Wrong Acts" and made outside the Twin City Policy period. (*See generally* ECF No. 24). Defendants oppose, arguing that: (1) under governing Ohio law, the Policy is ambiguous; (2) the State of Ohio's Indictment was not asserted on behalf of Mr. Norman or Mr. Amrine as to render it an "Employment Practices Claim" under the Policy; and (3) the Indictment, Charge, and Lawsuit are not "Interrelated Wrongful Acts pursuant to the Policy." (*See generally* ECF No. 25). Both parties rely on Ohio law in their briefing. (*See* ECF No. 24-1 at 9 n.3 (noting no substantive difference between Ohio law—where the alleged harassment occurred, the underlying criminal proceedings, Charges, and Norman lawsuit were filed—and Illinois law, where the Policy was issued); ECF No. 25 at 7–9).

"It is axiomatic that an insurer may maintain a declaratory judgment action to determine its rights and obligations under a contract of insurance. A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage." *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F. Supp. 2d 661, 670–71 (S.D. Ohio 2007) (quoting *Cincinnati Indem. Co. v. Martin,* 85 Ohio St.3d 604, 605, 710 N.E.2d 677 (1999) (citation omitted)). In Ohio, insurance policies are generally interpreted by applying rules of construction and interpretation applicable to basic contract law. *Id.* (citing *City of Sharonville v. Am. Employers Ins. Co.,* 109 Ohio St.3d 186, 187, 846 N.E.2d 833 (2006)). Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer. *Faruque v. Provident Life & Accident Ins. Co.,* 31 Ohio St.3d 34, 508 N.E.2d 949, syl. ¶ 1 (1987). Nonetheless, only ambiguous provisions are to be strictly construed against

the insurer. *Florists' Mut. Ins. Co.,* 521 F. Supp. 2d at 670–71 (citing *GenCorp, Inc. v. Am. Intern. Underwriters,* 178 F.3d 804, 818 (6th Cir.1999)). This "general rule of liberal construction," moreover, "cannot be used to create an ambiguity where one does not exist." *Monticello Ins. Co. v. Hale,* 284 F.Supp.2d 898, 901 (S.D. Ohio 2003) (citations omitted).  "If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Id.*

This Court will first determine whether the term "Employment Practices Claim" is ambiguous.  If the term is ambiguous, this Court will construe the ambiguity liberally in favor of the insured (Defendants) and strictly against the insurer (Plaintiff). *Florists' Mut. Ins. Co.,* 521 F. Supp. 2d at 670–71.  If the term is clear and unambiguous, however, this Court will give the words their plain and ordinary meaning and enforce the policy as written.

As relevant here, the Policy defines "Employment Practices Claim" as "any of the following if made by or on behalf of an Employee, an applicant for employment with an Insured Entity, or an Independent Contractor":

> (1) a written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;
>
> (2) a civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;
>
> (3) a formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the Insured's receipt of a notice of charges, formal investigative order or similar document, or by the Insured's having evidence of a filing related thereto; or

9

> (5) a criminal proceeding commenced by the return of an indictment or similar document.

(ECF No. 1 ¶ 12; ECF No. 1-4 at 33).

Twin City first argues that the *Norman* Lawsuit qualifies an "Employment Practices Claim" under the first section of the Twin City Policy definition, "because the suit was filed by Mr. Norman, an employee of the RK Defendants, and is a civil proceeding that was commenced by the filing and service of the complaint." (ECF No. 24-1 at 11). It further contends that the "Charges likewise qualify as an 'Employment Practices Claim' under subsection two because they are administrative proceedings which were commenced by Mr. Norman with a filing before the Ohio Civil Rights Commission . . . and, upon information and belief, dually filed with the United States Equal Employment Opportunity Commission, and were received by the RK Defendants." (*Id.*). Finally, according to Twin City, the Criminal Proceedings constitute an "Employment Practices Claim" under subsection three of the Twin City Policy, "as it was initiated by the State of Ohio on behalf of the people of the State and all Mr. Ford's victims, including Mr. Norman, an employee of RK." (*Id.*).

RK Defendants take issue with the last point. Specifically, they counter that "[a]lthough Mr. Norman was a former employee of Rural King, the Indictment against Mr. Ford was not made by or on behalf of Mr. Norman." (ECF No. 25 at 10). As such, they contend that "the criminal proceeding does not meet the definition of an 'Employment Practices Claim'" and thus cannot be one that is "interrelated" with the *Norman* Lawsuit or the Charges. (*Id.*)

At this stage, this Court cannot conclude as a matter of law that the Indictment qualifies as a Claim "by or on behalf of" Mr. Norman under the Policy to qualify as an "Employment Practices Claim" such that it may be "interrelated" with the *Norman* Lawsuit or the Charges. On the one

10

hand, the Policy expressly includes "a criminal proceeding commenced by the return of an indictment" within the definition of Claim. On the other hand, the threshold qualifier is that the Claim be made "by or on behalf of an Employee." Because a criminal indictment is brought by the State in its sovereign capacity, *see Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir.1996); *Mercer v. Lexington Fayette Urban County Gov't.*, 52 F.3d 325 (6th Cir.1995), it arguably does not depend on an employee's decision to initiate or pursue relief as to be made "by or on behalf" of Mr. Norman.

Resisting this conclusion, Twin City contends that there is no ambiguity because the Sixth Circuit has interpreted the phrase "on behalf of" as meaning "in the interest of; as the representative of; for the benefit of." (*See* ECF No. 24-1 at 11 (citing *Platt v. Bd. of Commissioners on Grievances & Discipline of Ohio Supreme Ct.*, 894 F.3d 235, 247 (6th Cir.2018) (holding that the words "on behalf of" in provision which provides "that a judge or judicial candidate shall not '[m]ake speeches on behalf of a political party or another candidate for public office'" does not render the rule unconstitutionally vague, agreeing with the district court that this language "is not difficult to understand and would provide an ordinary person fair notice of what conduct is prohibited") (internal quotation marks omitted))).

But a criminal indictment being brought "on behalf of" the State of Ohio does not render it clear and unambiguous that it was brought "on behalf of" Mr. Norman  to qualify as an "Employment Practices Claim," as defined in the Policy.  The term "on behalf of" is undefined in the contract and therefore ambiguous. *See Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 517 F. Supp. 3d 725, 729–30 (E.D. Mich. 2021) (finding that insurance policy which states that it will cover "direct physical loss or damage" but does not define "loss" or "damage"

11

render the terms "in this contract is ambiguous, and ambiguities in an insurance contract are construed in favor of the insured").

Accordingly, because the terms of the Policy are unambiguous, this Court construes the ambiguity against Plaintiff. Accordingly, its motion for judgment on the pleadings is **DENIED**. (ECF No. 24).

## IV.    CONCLUSION

For the reasons explained above, Plaintiff's Motion for Judgment on the Pleadings is **DENIED**. (ECF No. 24).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 29, 2025**

12